■ ANCHOR HOLDING Co., Appellant, v MICHAEL'S COFFEE SHOP, Respondent, and DICPA FOODS, INC., Intervenor-Respondent. — Order, Appellate Term, Supreme Court, New York County, entered April 17, 1979 which affirmed without prejudice to a plenary suit by the intervenor DICPA Foods, Inc. (DICPA) an order of the Civil Court, New York County, dated November 8, 1977 denying the application of DICPA to vacate a final judgment of possession, affirmed without costs. The facts are fairly stated in the dissent. We all agree with the Appellate Term that the conveyance to Michael's Coffee Shop was a sublease and not an assignment since DICPA had retained a reversionary interest. Although DICPA at times asserted it had assigned the lease, it is plain that there was no assignment. Anchor, as landlord, and its attorney knew at all the times involved that DICPA was asserting a reversionary interest, even though its attorney called the transfer an assignment. The instrument relied upon by Anchor states it is a sublease. The letter of DICPA's attorney, dated August 30, 1977, upon which Anchor also relies, describing the transaction as an assignment, nonetheless asserts the reversionary interest of DICPA. When the landlord insti-

tuted the holdover proceeding it and its attorney knew that DICPA asserted a reversionary interest, characteristic of a sublease. It is clear that the landlord was never furnished with an assignment. Moreover, DICPA tendered the rent prior to the commencement of the proceeding and the tender was refused. Under the circumstances DICPA was entitled to notice and to be joined as a party in the nonpayment dispossess proceeding. While we concur in Appellate Term's determination that it is improvident to reinstate a tenant so long after eviction and after the premises have been relet, it does not lie in landlord's mouth to assert that DICPA was not entitled to notice and to be served and made a party. The plain fact is that despite its attorney's statement that there had been an assignment, none was forthcoming and none exists. A reversionary interest was always asserted. DICPA is not entitled to reinstatement as a tenant because of the long delay as Appellate Term held. However, it has a right to litigate its claims in a plenary suit, if so advised. Landlord's claim that it was misled by the representations of DICPA and its attorney that there was an assignment is appropriate to be raised in such action. It may well be that such representations and the failure to produce the assignment may be found to preclude any recovery by DICPA. Landlord's claim in this proceeding to which DICPA was not made a party should not foreclose DICPA's rights to litigate its claims. Concur — Birns, Sandler and Fein, JJ.

Kupferman, J.P., and Carro, J., dissent in part in a memorandum by Carro, J., as follows: In February, 1971, DICPA entered into a 15-year lease of the subject premises with Anchor's predecessor in interest as landlord. The lease provided that assignment or subletting of the premises was prohibited without prior written consent of the landlord. On March 18, 1976, the attorney for DICPA wrote to the attorney for the prior landlord that "The lease was assigned on February 18, 1976 to Michael's Coffee Shop, Inc." (hereinafter Michael's). Anchor acquired the premises in February, 1977 and was advised by the prior landlord that the lease had been assigned by DICPA to Michael's and that it has been accepting the rent, even though it had not received a copy of the assignment and had not given written consent. Anchor continued to accept the rent from Michael's. In March, 1977, because of alleged violations of the lease, a holdover proceeding was commenced by Anchor against Michael's (without notice to DICPA). A stipulation of settlement was entered into on March 17, 1977 providing, *inter alia,* for formal consent to the supposed assignment, provided a copy was delivered to appellant. No assignment was ever delivered. However, in reliance upon the representations of the existence of such an assignment, Anchor continued to treat Michael's as the tenant, without objection or comment from DICPA. On August 10, 1977, Michael's wrote Anchor requesting consent to an assignment of the lease to a proposed purchaser of the coffee shop, which was refused. On August 30, 1977, DICPA's counsel, following up a telephone conversation where a copy of the assignment was again requested, wrote Anchor that DICPA was the holder of a security agreement on the fixtures in the premises, which agreement was in default, that DICPA had assigned the lease to Michael's and that one of the conditions of said assignment was that it would be void upon default of the security agreement. No copy of the alleged assignment was forthcoming. On September 12, 1977, Anchor commenced a summary proceeding against Michael's (again without notice to DICPA) for nonpayment of rent. Michael's defaulted and Anchor obtained final judgment of possession on September 27, 1977. DICPA subsequently moved for leave to intervene in the nonpayment proceeding. The agreement between DICPA and Michael's was produced for

the first time on October 27, 1977, at the hearing on the motion. The Civil Court denied the application, holding that Anchor was not charged with knowledge of any "private agreement" entered into between DICPA and Michael's; that the alleged assignment was never delivered to Anchor, which relied on the advices it received from DICPA and treated Michael's as the tenant. The court found that DICPA was not the tenant, was not entitled to notice and that its remedy was to foreclose its chattel mortgage on the fixtures. DICPA appealed to the Appellate Term, which affirmed without prejudice, however, to a plenary suit by DICPA. It found DICPA to have been the prime tenant under its original lease, while the conveyance to Michael's was a sublease, and not an assignment, with DICPA retaining a reversionary interest. It did not restore DICPA to the premises, on equitable grounds, since the appeal was not brought on until approximately 18 months after the eviction, and the premises had been relet. The Appellate Term was correct in stating that the conveyance to Michael's was a sublease and not an assignment, since DICPA had in fact retained a reversionary interest to itself. However, as indicated by the Civil Court, Anchor should not be charged with knowledge of this since DICPA, on a number of occasions, held itself out as having assigned the lease while retaining only a lien on the fixtures, and failed to produce the alleged assignment even after several demands and promises to do so. The minutes of the October 27, 1977 hearing are instructive: "Mr. L. [Anchor]: We are only saying all you did is you assigned the lease to Michael's. Mr. S. [DICPA]: We did not. Mr. L.: That's what you told the other landlord; that's all you told the other landlord. You are saying you are a liar. That you write a letter that has no credibility or integrity? Don't demean yourself that way. Mr. S.: No, what I am saying is the word 'assignment' was incorrectly used. Mr. L.: How about your other letter? Mr. S.: And it was used on two occasions. Mr. L.: On five occasions. Mr. S.: Five occasions. The court: Was any more accurate term ever used, for example, 'sublease?' Mr. S.: I don't believe, I don't believe the term 'sublease' was used". Anchor relied on DICPA's representations to its detriment, and was also entitled to rely on the principle that, where a person other than the original lessee is shown to be in possession of leasehold premises, the law presumes that the lease had been assigned to him. The failure to produce the alleged assignment at the appropriate time was a failure to rebut that presumption. The payment of the rent to Anchor by Michael's, which had been let into possession by DICPA, the original lessee, was prima facie evidence of the assignment of the whole term. One who thus holds himself out as either assignee or assignor is estopped from denying the assignment. (See *Mann v Munch Brewery*, 225 NY 189, 193; *Rohdenburg v Lazarus, Inc.*, 148 Misc 583, 584.) I believe DICPA to be estopped from denying an assignment and would reinstate the order of the Civil Court.